[609 NYS2d 951]

In the Matter of GLENS FALLS CITY SCHOOL DISTRICT, Appellant, v CITY OF GLENS FALLS INDUSTRIAL DEVELOPMENT AGENCY et al., Respondents.

Third Department, April 7, 1994

### APPEARANCES OF COUNSEL

*Bartlett, Pontiff, Stewart & Rhodes, P. C.,* Glens Falls *(J. Lawrence Paltrowitz* of counsel), for appellant.

*FitzGerald Morris Baker Firth, P. C.,* Glens Falls *(Peter A. Firth* of counsel), for City of Glens Falls Industrial Development Agency, respondent.

*Newell & Toomey (Ronald L. Newell, City Attorney* of Glens Falls, of counsel), for City of Glens Falls, respondent.

### OPINION OF THE COURT

CARDONA, P. J.

In the 1980's respondent City of Glens Falls in Warren County, through its Urban Renewal Agency, acquired and improved certain real property to induce CB Sports to locate within the City. The project, which cost about $1.6 million, was funded by the issuance of Urban Renewal Agency bonds, payment of which was guaranteed by the City. The property was transferred to a subsidiary of the State Urban Development Corporation and leased to CB Sports, which in 1986 entered into an agreement to make annual "payments in lieu of taxes" (hereinafter the PILOT agreement) of approximately $65,000 to the City to assist in repayment of the bonds. When CB Sports encountered difficulties and defaulted on its obligation, a new developer, Pioneer Apollo Drive Company, agreed to improve the facilities on the property and lease it to Niagara Mohawk Power Corporation. Respondent City of Glens Falls Industrial Development Agency (hereinafter the IDA) acquired the property and in 1992 entered into an installment sale agreement with Pioneer which acquired financing from a bank. As part of the transaction, CB Sports' obligation under its PILOT agreement was brought current, and Pioneer and Niagara Mohawk entered into a PILOT agreement with the IDA in October 1992 which has two components: base annual payments of $65,000, increasing to

$78,000 in 2002; and beginning in 1993, an additional annual payment based upon new assessable improvements to the property, with a minimum additional payment of $25,000. The base payments were allocated entirely to the City; the additional payments were allocated to all affected tax jurisdictions, including petitioner, in accordance with their respective tax rates. After 2007, the total annual payments will equal 100% of what the real property taxes would be for the property, to be allocated among all of the affected tax jurisdictions.

After the IDA adopted a resolution authorizing the sale and approving the PILOT agreement, petitioner commenced this proceeding, seeking its proportionate share of all payments made under the current PILOT agreement and under the former PILOT agreement with CB Sports. The application was dismissed.

Petitioner contends that its right to a proportional share of the payments under the PILOT agreements is derived from General Municipal Law article 18-A, which governs industrial development agencies. Prior to 1992, article 18-A contained no reference to payments in lieu of taxes, but there can be little doubt that industrial development agencies had the authority to require such payments (see, e.g., Matter of Town of Minerva v Essex County Indus. Dev. Agency, 173 AD2d 1054, lv denied 78 NY2d 857), and in Counties of Warren & Washington Indus. Dev. Agency v Boychuck (109 AD2d 1024, 1026, lv denied 65 NY2d 603) we concluded that such payments were not merely in lieu of an assessed tax, but were in consideration of various benefits conferred upon the developer, including the freedom from tax liability. If, as we concluded in Boychuck, the payments are not related exclusively to the taxes which would have been derived from the property were it not exempt, it seems only logical to conclude that the payments need not be allocated to the various taxing entities in proportion to what those taxes would have been. Among the benefits conferred upon CB Sports as the original developer was the City's guarantee of payment of the bonds used to finance the project, and we agree with respondents that the consideration for the payments to the City pursuant to the original PILOT agreement and the base payments to the City required by the subsequent PILOT agreement approved by the IDA can be found in the benefit granted by the City, which is now obligated to pay on the bonds.

General Municipal Law § 874 (former [3]) was added in 1992 (L 1992, ch 772) to require that payments received by an

industrial development agency in lieu of taxes be remitted "to the appropriate municipality" within 30 days. Petitioner contends that the statute, which was in effect when the second PILOT agreement was executed, requires the equitable distribution of payments pursuant to a PILOT agreement on a pro rata basis to all the affected tax jurisdictions, including school districts. The legislative history of the statute, however, supports respondents' contention that the purpose of the statute was to ensure the prompt payment of the moneys due under PILOT agreements and not to require a proportional allocation of the payments.

Additional support for this interpretation can be found in subsequent legislation. By Laws of 1993 (ch 356), the Legislature made explicit provisions in General Municipal Law article 18-A for PILOT agreements. General Municipal Law § 854 (17) was added to define payments in lieu of taxes, a definition which relates such payments directly to the taxes that would have been levied if the property were not exempt, and contains no reference to other benefits conferred upon the developer. General Municipal Law § 858 (15) was amended to authorize an industrial development agency to enter into PILOT agreements, and to provide as follows: "Unless otherwise agreed by the affected tax jurisdictions, any such agreement shall provide that payments in lieu of taxes shall be allocated among affected tax jurisdictions in proportion to the amount of real property tax and other taxes which would have been received by each affected tax jurisdiction had the project not been tax exempt". General Municipal Law § 874 (3) was also amended to require prompt remittal of payments in lieu of taxes "to each affected tax jurisdiction". The legislation was generally effective October 19, 1993 and provided that "[t]his act shall not apply to projects for which an agency * * * has authorized any assistance prior to the date on which this act shall have become a law" (L 1993, ch 356, § 38, amended by L 1993, ch 357, § 15). In keeping with this prospective effect, the amendment to General Municipal Law § 858 (15) was made effective January 1, 1994 (ibid.), and the statute as amended also provides that in the absence of an agreement by the affected tax jurisdictions, payments made pursuant to a PILOT agreement "shall be allocated in the same proportions as they had been prior to January first, nineteen hundred ninety-three for so long as the agency's activities render a project non-taxable by affected tax jurisdictions" (General Municipal Law § 858 [15]).

We are of the view that the purpose of the amendments effected by Laws of 1993 (ch 356) was to require proportional allocation of PILOT payments, unless the affected tax jurisdictions agree otherwise. It is also our view, however, that considering the prospective nature of the legislation and the explicit limitation on its application, the proportional allocation requirement created by the legislation did not exist prior to the enactment of Laws of 1993 (ch 356). Inasmuch as the amendments effected by chapter 356 are not applicable either to the project for which the IDA authorized assistance in this case or to the payments being made pursuant to the PILOT agreement executed in October 1992, there is no requirement that the payments be allocated among the affected tax jurisdictions.

The subject property is tax exempt not because of a discretionary determination by the City, but because the property is owned by the IDA (see, General Municipal Law § 874), and the exempt status began when the property was acquired by the IDA's predecessor (see, McKinney's Uncons Laws of NY § 6272 [New York State Urban Development Corporation Act § 22; L 1968, ch 174, § 1]). To encourage economic development within its borders, the City conferred a benefit on the developer by guaranteeing payment of the bonds, and ultimately the City incurred the obligation of payment on the bonds. Petitioner, in contrast, conferred no benefit and incurred no obligation. In these circumstances, we find nothing unlawful, arbitrary or capricious in the IDA's approval of the PILOT agreement whereby the entire base payment is allocated to the City. The absence of any statutory requirement of proportional allocation of payments under a PILOT agreement relating to property owned by a subsidiary of the State Urban Development Corporation also renders meritless petitioner's claim of entitlement to a share of the payments made by CB Sports.

MIKOLL, WEISS and PETERS, JJ., concur.

Ordered that the judgment is affirmed, without costs.